ARKANSAS BOARD of COLLECTION AGENCIES
and Old Republic Surety Company *v.* Sharon McGHEE, et al.

07-129                                                271 S.W.3d 512

Supreme Court of Arkansas
Opinion delivered January 17, 2008

*Joel Taylor, P.A.*, by: *Joel Taylor*, for appellant Old Republic Surety Company.

*Dustin McDaniel*, Att'y Gen., by: *Arnold M. Jochums*, Ass't Att'y Gen., for appellant Arkansas Board of Collection Agencies.

*Todd Turner* and *John Peel*, for appellee.

R OBERT L. BROWN, Justice. The Arkansas Board of Collection Agencies ("Board") appeals from an order of the Pulaski County Circuit Court reversing its decision to deny the request of Sharon McGhee, individually and on behalf of a class of similarly situated persons, for a claim on a surety bond issued by Old Republic Surety Company, Inc. ("Old Republic"). We reverse and remand the decision of the Board and affirm the decision of the circuit court.

On May 27, 2003, McGhee, individually and on behalf of a class of similarly situated persons, filed an action in Pope County Circuit Court against Old Republic. Old Republic had previously issued a surety bond to the Board dated August 1, 1999, in the amount of $50,000 on behalf of Russellville Check Express, Inc. ("RCE"), a payday lender licensed under the Arkansas Check-Cashers Act, which was enacted in 1999 and is codified at Arkansas Code Annotated §§ 23-52-101 to -117 (Repl. 2000 and Supp. 2007). McGhee sought release of the bond amount to satisfy a consent judgment she and the class had received against RCE in the amount of $191,419.20.[1] The consent judgment, accordingly, established liability and damages against RCE for the check-casher contracts entered into with its customers, leaving only the issue of collection on the bond from the surety, Old Republic, to be resolved.

The Pope County Circuit Court granted summary judgment in favor of McGhee, and Old Republic appealed to this court. In *Old Republic Surety Company v. McGhee*, 360 Ark. 562, 203 S.W.3d 94 (2005) (*McGhee I*), this court reversed the circuit court's grant of summary judgment and held that McGhee had failed to exhaust her administrative remedies by filing her suit in circuit court without first seeking relief from the Board.

After the circuit court dismissed her action in accordance with this court's decision in *McGhee I*, McGhee sought relief from the Board on the issue of Old Republic's liability under its bond. A hearing was held before the Board on May 25, 2005, after which the Board issued its Findings of Fact, Conclusions of Law and Order. In its order, the Board denied McGhee relief and ruled that Section XXX of its Rules and Regulations requires that the check casher be found in violation of either the Check-Cashers Act or the Rules and Regulations adopted pursuant to the Act before making a demand on the bond. The Board concluded that McGhee had presented no evidence that RCE had violated the

---

[1] The consent judgment against RCE is dated January 8, 2003, and was entered in Pope County Circuit Court. It explains that McGhee's complaint against RCE had alleged that RCE had charged its customers usurious rates of interest and that the circuit court had previously entered an order granting summary judgment in favor of McGhee regarding her usury claim. The consent judgment further declares all of RCE's customer contracts outstanding on or before the date of the filing of McGhee's complaint as void and unenforceable.

Check-Cashers Act or the Rules and Regulations, and, accordingly, McGhee was not entitled to a claim on the bond.

McGhee then filed a petition for judicial review in Pulaski County Circuit Court on January 20, 2006, pursuant to the Arkansas Administrative Procedure Act. Shortly after McGhee filed her petition for judicial review, Old Republic filed a motion to consolidate that petition with an already pending petition for judicial review. The pending petition involved a May 16, 2003 order of the Board, in which the Board, in an almost identical case, had denied McGhee's claim on a bond issued by Old Republic on behalf of AAA Check Cashing, Inc., another payday lender. McGhee responded to the motion to consolidate and asserted that the administrative appeal concerning the bonds issued on behalf of AAA Check Cashing had been resolved.[2] As a result, McGhee formally moved to dismiss the earlier appeal.[3]

On October 9, 2006, a hearing was held by the circuit court on McGhee's petition for review, and an order was entered on October 17, 2006. In that order, the circuit court reversed the Board's order and ruled that McGhee was entitled to the proceeds from the bond at issue.[4] Specifically, the circuit court concluded: "The State Board of Collection Agency's ruling that the surety bond does not cover the Petitioner's loss in this case is reversed pursuant to Arkansas Code Annotated § 25-15-212(h)." Old Republic later filed a motion for a new trial, which was never ruled upon by the circuit court, and, thus, was deemed denied thirty

---

[2] McGhee states in her brief to this court that after she filed a petition for review in the AAA Check Cashing case, the class reached a settlement with the owners of AAA Check Cashing, which was approved by the Craighead County Circuit Court. She states that this mooted her claim against Old Republic in that case.

[3] McGhee and Old Republic agreed to a Joint Stipulation of Facts, which was presented to the State Board at the May 25, 2005 hearing concerning the bonds issued on behalf of RCE. In this Joint Stipulation of Facts, the parties acknowledged that "[i]n an almost identical state court case," McGhee had been awarded a judgment against AAA Check Cashing and that she had received a hearing in that case before the Board. A copy of the transcript from the earlier hearing and the advisory opinion issued after the hearing by the Hearing Officer for the Board were attached to the Joint Stipulation. The parties further stipulated that the advisory opinion had subsequently been approved and adopted by the Board.

[4] On October 11, 2006, Old Republic, which was not a formally named party in the administrative appeal, filed a motion to intervene, and an Agreed Order of Intervention was entered by the circuit court.

days thereafter pursuant to Rule 4(b)(1) of the Arkansas Rules of Appellate Procedure – Civil. Old Republic and the Board filed separate notices of appeal from the circuit court's order.

## I. Collateral Estoppel

Old Republic first maintains that McGhee is collaterally estopped from pursuing any administrative appeal because she purposefully dismissed her petition for judicial review concerning AAA Check Cashing, which, according to Old Republic, involved the same parties and the same issues. Thus, Old Republic claims that the first administrative decision by the Board, which denied McGhee's request for a claim on a bond issued by Old Republic on behalf of AAA Check Cashing, is intact and controls the same issues now raised in the instant appeal to this court. Old Republic insists that the language on which McGhee bases her claim against the bond in the instant case is the same as that in the previous case and that the issue of whether the language of the bond allowed McGhee's claim against the bond was extensively litigated in the previous hearing before the Board.

Old Republic further contends that the doctrine of collateral estoppel applies to agency decisions and is used to prevent collateral attacks on previous agency decisions when the agency has conducted a hearing, made findings of fact and law, and applied those findings in an administrative adjudication. Old Republic admits, however, that it did not raise the affirmative defense of collateral estoppel to the Board in the instant case, but it asserts that the first administrative appeal involving AAA Check Cashing was still pending in circuit court when the May 25, 2005 hearing in this case took place and that it was not until after the instant administrative appeal was lodged in circuit court that the first administrative appeal was dismissed and the previous administrative decision became final and controlling. Old Republic also admits that despite arguing the issue of collateral estoppel to the circuit court during the circuit court's hearing and also in its motion for a new trial, the circuit court never ruled on the issue.

We decline to address the issue of collateral estoppel because the issue is not preserved for our review. Old Republic admits that it never raised this issue to the Board as a defense. It argues, however, that it could not raise the issue before the board because the AAA Check Cashing appeal was pending in circuit court on a petition for judicial review and had not been dismissed by McGhee. It was only at the time of the dismissal, Old Republic

contends, that the AAA Check Cashing matter became final for purposes of collateral estoppel, and by that time the RCE matter was already in circuit court.

We are not persuaded by Old Republic's argument. At the time of the hearing before the Board on McGhee's claim relating to RCE, Old Republic was well aware of the fact that the Board had already denied the AAA Check Cashing claim on May 16, 2003, based on an advisory opinion issued by its appointed hearing officer. For this reason, it was obligated to present any affirmative defense to the Board premised on collateral estoppel during the RCE proceedings, even though a petition for judicial review was pending in circuit court on the AAA Check Cashing claim.[5]

■ This court has held repeatedly that defenses must be presented first to the administrative agency before they can be presented to an appellate court for consideration. *See, e.g., Nash v. Arkansas Elevator Safety Bd.*, 370 Ark. 345, 259 S.W.3d 421 (2007); *AT&T Communications of the Southwest, Inc. v. Arkansas Public Serv. Comm'n*, 344 Ark. 188, 40 S.W.3d 273 (2001); *Hamilton v. Jeffrey Stone Co.*, 6 Ark. App. 333, 641 S.W.2d 723 (1982). Old Republic's collateral-estoppel point has no merit.

## II. Substantial Evidence

Old Republic next claims that the record contains substantial evidence to support the Board's decision to deny McGhee's claim on the Old Republic surety bond and that the Board's decision is not arbitrary or capricious and cannot be characterized as an abuse of discretion. *See* Ark. Code Ann. § 25-15-212(h)(6) (2007). Old Republic further contends that McGhee was afforded a full and complete hearing on the issues she raises before the Board. It adds that the Board's previous decision concerning the bonds issued on behalf of AAA Check Cashing was reached only after a full hearing in front of an experienced hearing officer who heard testimony from witnesses and considered exhibits and briefs submitted by each party and then issued an advisory opinion. Old Republic notes that the transcript from the previous hearing, including the exhibits, the hearing officer's advisory opinion, and

---

[5] Nor did Old Republic obtain a ruling from the Pulaski County Circuit Court on its collateral estoppel defense, as it readily admits, which provides an additional reason to affirm for lack of preservation. *See, e.g., Beverly Enterprises-Arkansas, Inc. v. Thomas,* 370 Ark. 310, 259 S.W.3d 445 (2007).

the Board's previous Findings of Fact and Conclusions of Law and Order in AAA Check Cashing were submitted by both parties at the Board's May 25, 2005 hearing as part of the Joint Stipulation of Facts. It insists that the Board relied on all the evidence submitted in reaching its decision in the RCE case and that the evidence is sufficient to support the Board's decision to deny the claim against the bond. Moreover, it urges that the Board is familiar with interpreting its own Rules and Regulations, as well the language of the bond in question, and that its decision should be upheld.

The Board, which submitted a separate brief, argues too that there was substantial evidence to support its decision in favor of Old Republic and against collection under the bond. It asserts that it was required to follow the procedures set out in its own Rules and Regulations and that Section XXX of the Rules and Regulations provides that the check casher must have violated either a provision of the Check-Cashers Act or one of the Board's rules in order for a claimant to make demand on a bond. The Board contends that McGhee presented no evidence that RCE performed any act or engaged in any conduct prohibited by the Check-Cashers Act or the Board's Rules and Regulations, and, therefore, the Board's decision to deny McGhee's request for a claim on the bond was not arbitrary or capricious or characterized by an abuse of discretion.

The Board also maintains that in making its decision in this case, it relied on the decision it made several years ago concerning the bond issued on behalf of AAA Check Cashing and that the parties stipulated that this earlier decision could be considered. In reaching its earlier decision, the Board emphasizes that it relied heavily on the advisory opinion issued by the hearing officer, which thoroughly discussed and analyzed the intent of the parties in issuing the bond as well as the application of Section XXX. The Board argues that it took this earlier decision into consideration and thoroughly analyzed the issues in the RCE matter and, therefore, its decision was not arbitrary. The Board insists that there was evidence presented that Old Republic had not intended for its bond to cover usury judgments and that because it cannot be said that fair-minded individuals would not have reached the same conclusion as the Board, the Board's decision is supported by substantial evidence.

McGhee makes several points in rebuttal. She maintains that the real issue in this case is not whether RCE violated the Check-Cashers Act or the Board's Rules and Regulations, but,

rather, whether the bond covers her loss. She points out that she does not seek relief based on any of the Board's Rules and Regulations, as those rules did not even exist when Old Republic issued the bond. Rather, she contends that the bond was in essence an insurance agreement, which should be liberally construed in favor of coverage, and under the bond's language, her loss is covered.

Specifically, she contends that under the bond Old Republic agreed to satisfy, up to $50,000, "any loss or damages suffered by the State and/or any person(s) of the State," for violation of the Check-Cashers Act, the Rules and Regulations, and "any other applicable laws of the State [of] Arkansas," and she insists that any ambiguity in this language must be construed in favor of coverage and against the surety. She notes that the Board's Executive Director unilaterally modified the language in the bonds after the RCE bond was issued to eliminate the language providing for coverage resulting from a violation of "any other applicable laws" in Arkansas, and she makes the point that had the bond not provided coverage for a violation of any law, including usury laws, when issued, the Executive Director would not have removed that language.

McGhee argues, in addition, that the circuit court's reversal of the Board's decision, which denied the bond claim against Old Republic, was proper because RCE did actually violate the Board's subsequently adopted rules, which prohibit deceptive or unconscionable business practices, because the charging of unconstitutional usurious interest rates is unconscionable. She further claims that RCE continued to charge usurious rates and fees even after this court held that the General Assembly could not usurp a judicial function by legislating that certain fees allowed under the Check-Cashers Act were not interest. *See Luebbers v. Money Store, Inc.*, 344 Ark. 232, 40 S.W.3d 745 (2001).[6] She insists that the Board's decision in this case denying the claim under the bond was arbitrary and capricious and that it was properly reversed by the circuit court.

---

[6] In *Luebbers, supra,* this court held that Ark. Code Ann. § 23-52-104(b) (Repl. 2000) of the Check-Cashers Act, which exempted certain fees charged by check cashers from being considered as interest, was a violation of the separation-of-powers doctrine because it deprived courts of the power to decide whether a transaction was usurious. This court said that § 23-52-104(b) was an invalid attempt by the General Assembly to exclude certain check-cashing transactions from the confines of the Arkansas Constitution's usury provisions.

Decisions by the Arkansas Board of Collection Agencies are reviewed pursuant to the Administrative Procedure Act (APA), which is codified at Arkansas Code Annotated §§ 25-15-201 – 25-15-218 (Repl. 2002 and Supp. 2007). This court has said that the "[r]eview of administrative agency decisions, both by the circuit court and by appellate courts, is limited in scope." *Dep't of Health & Human Servs. v. R.C.*, 368 Ark. 660, 667, 249 S.W.3d 797, 803 (2007) (quoting *Ark. Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 185, 959 S.W.2d 46, 48 (1998)). Furthermore, "[t]he review by appellate courts is directed not to the decision of the circuit court but to the decision of the administrative agency." *Id.*

The Administrative Procedure Act provides for a circuit court's review of an administrative decision on the following grounds:

(h) The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the agency's statutory authority;

(3) Made upon unlawful procedure;

(4) Affected by other error or law;

(5) Not supported by substantial evidence of record; or

(6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. § 25-15-212(h) (Repl. 2002).

This court has explained the deference that we give to an administrative decision:

We have recognized that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying

legal issues affecting their agencies, and this recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency.

*R.C.*, 368 Ark. at 668, 249 S.W.3d at 803-04 (quoting *Ark. Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 185, 959 S.W.2d 46, 48-49 (1998)). This court has further explained that "[t]he challenging party has the burden of proving an absence of substantial evidence and must demonstrate that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach its conclusion." *R.C.*, 368 Ark. at 668, 249 S.W.3d at 804. Finally, "[t]he question is not whether the evidence would have supported a contrary finding, but rather whether it supports the finding that was made." *Id.*

In its Findings of Fact, Conclusions of Law and Order, the Board ruled that Section XXX of its Rules and Regulations contain the only reference about when the Board could make demand on a surety bond and that Section XXX requires that the Board find that the check casher be in violation of either the Check-Cashers Act or its Rules and Regulations before making demand on a bond. The Board's ruling, however, is unduly restrictive.

The surety bond issued on behalf of RCE states:

THE CONDITIONS OF THE ABOVE OBLIGATIONS ARE SUCH THAT:

. . . .

That the above bound Principal shall faithfully comply with and abide by each and every provision of [Act 1216 of 1999] and all the Rules and Regulations promulgated thereunder; shall faithfully perform the duties and obligations pertaining to the business of check-cashing/deferred presentment option services; *shall satisfy any loss or damages suffered by the State and/or any person(s) of the State* resulting from the Principal's violation of any provision of Act 1216 of 1999 (or as amended) or the Rules and Regulations promulgated thereunder *or any other applicable laws of the State [of] Arkansas*; and that the State of Arkansas State Board of Collection Agencies or any person(s) of this State suffering such loss or damages shall have the right to bring an action on this bond against the Principal or Surety.

(Emphasis added.) McGhee points to the above emphasized language to support her contention that the bond covers any loss resulting from RCE's violation of any state law, not just its violation of the Check-Cashers Act or the Board's Rules and Regulations. McGhee argues that RCE manifestly violated this state's usury laws by entering into usurious check-cashing agreements with its customers and that the consent judgment entered on January 8, 2003, establishes that liability.

We agree that the applicable laws of the State of Arkansas, as referred to under the Old Republic bond, have been violated. The Arkansas Constitution provides the following regarding rates of interest and usurious loans:

> (a) General Loans:
>
> (i) The maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract.
>
> (ii) All such contracts having a rate of interest in excess of the maximum lawful rate shall be void as to the unpaid interest. A person who has paid interest in excess of the maximum lawful rate may recover, within the time provided by law, twice the amount of interest paid. It is unlawful for any person to knowingly charge a rate of interest in excess of the maximum lawful rate in effect at the time of the contract, and any person who does so shall be subject to such punishment as may be provided by law.

Ark. Const. art. 19, § 13(a).

In addition, Arkansas statutes provide for the maximum rate of interest to be charged in this state based on Article 19, § 13 of the Arkansas Constitution and prohibit charging a usurious rate of interest, which is an interest rate in excess of the maximum rate. *See* Ark. Code Ann. §§ 4-57-104 – 4-57-105 (Repl. 2001).

It is apparent to this court that what this case entails is a question of law and whether RCE violated the laws of Arkansas so as to invoke the terms of Old Republic's bond. While Old Republic and the Board would like to limit liability to violations of the Check-Cashers Act and the Board's Rules and Regulations, which were not yet adopted when the bond was issued in 1999, the

plain reading of the bond language is not so limited. It protects against loss or damage suffered by any person resulting from RCE's violation of the "applicable laws of the State [of] Arkansas." Without question, a violation of this state's usury laws is a violation of an applicable law of Arkansas.

Old Republic remonstrates and urges that it was entitled to rely on the Check-Cashers Act, which was enacted in 1999, before this court cast doubt on its constitutionality in our *Luebbers* decision in 2001. We do not view that Act as affording Old Republic blanket protection for purposes of the 1999 bond. The usury laws of this state, including what constitutes interest or fees, have been part of our constitution, statutory law, and case law for decades. *See* Ark. Const. art. 19, § 13(a); Ark. Code Ann. §§ 4-57-104 to -105 (Repl. 2001); *see, e.g.*, *Schuck v. Murdock Acceptance Corp.*, 220 Ark. 56, 247 S.W.2d 1 (1952). It was incumbent upon Old Republic to know and abide by the clear public policy of this state as expressed by the Arkansas people in the Arkansas Constitution regardless of one legislative act (the Check-Casher Act) that runs counter to that public policy. Old Republic did not do so, and by this failure, it violated the laws of this state and became liable under the bond.

■ We conclude that the Board's decision is at odds with the clear language of the Old Republic bond because this state's anti-usury policy as expressed by Article 19, § 13 of the Arkansas Constitution has been violated. Hence, substantial evidence does not support the Board's decision. We further hold that by violating the Arkansas Constitution, the applicable laws of this state were violated irrespective of whether the Check-Cashers Act provided that check-casher fees were not interest. *See* Ark. Code Ann. § 23-52-104(b) (Repl. 2000), *declared unconstitutional by Leubbers v. Money Store, Inc., supra.* Accordingly, Old Republic is liable to McGhee under the bond.

We reverse the order of the Arkansas Board of Collection Agencies and remand to the Board for further action with regard to the surety bond and McGhee's claim in accordance with this opinion.

Administrative decision reversed and remanded; circuit court affirmed.